UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA TRANSPORTATION MUSEUM, INC., | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | 1:17-cv-02373-JMS-MPB |
| | ) | |
| HOOSIER HERITAGE PORT AUTHORITY, CITY | ) | |
| OF FISHERS, INDIANA, and CITY OF NO- | ) | |
| BLESVILLE, INDIANA, | ) | |
| *Defendants.* | ) | |

## <u>ORDER</u>

Plaintiff Indiana Transportation Museum, Inc. ("ITM") owns several trains which it has operated on a rail line owned by Defendant Hoosier Heritage Port Authority ("HHPA") that runs through the cities of Fishers and Noblesville, Indiana. In 2016, ITM was prohibited from operating its trains on HHPA tracks, and this lawsuit followed. Presently pending is a Motion to Dismiss filed by HHPA, [Filing No. 35], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter jurisdiction exists for his or her claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555

(2007)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## II.
### BACKGROUND

The following are the factual allegations in the Amended Complaint, which the Court must accept as true at this time:

ITM owns and operates "a tourist and educational rail system, including engines [and] passenger cars," and runs "excursions on the rail line [owned] by [HHPA]."  [Filing No. 25 at 1.] Specifically, ITM operates the Fair Train which runs during the Indiana State Fair each August, and the Polar Bear Express Train during the holiday season in late November and December, as well as other historical, educational, and entertainment excursions.  [Filing No. 25 at 4.]  Most of ITM's excursions take place from March to January and are on the weekends, although special tours may be scheduled for schools and other groups.  [Filing No. 25 at 5.]  [Filing No. 25 at 4.] ITM is regulated by the Federal Railroad Administration ("FRA").  [Filing No. 25 at 1-2.]

HHPA is a governmental entity that owns approximately 37.5 miles of railroad tracks from 10th Street in downtown Indianapolis to Tipton, Indiana, and the cities of Fishers and Noblesville own portions of the tracks as well. [Filing No. 25 at 2-3.] HHPA is responsible for overseeing the railroad's operations and for issuing licenses to utilize HHPA-owned tracks. [Filing No. 25 at 2.]

From 1996 to 2006, ITM and HHPA contracted for ITM to use HHPA tracks to operate excursions from Tipton, Indiana to 38th Street in Indianapolis. [Filing No. 25 at 3; Filing No. 25-1.] Under the contract, HHPA was responsible for maintaining the tracks. [Filing No. 25 at 3.] The parties also entered into a Conditional Policy of Use on June 25, 2012 (the "2012 CPOU"). [Filing No. 25 at 5.]

In 2016, the FRA conducted an inspection of ITM's operations, and found that no violations had occurred. [Filing No. 25 at 4; Filing No. 25-2.] HHPA requested certain information and data from ITM in June 2016. [Filing No. 25 at 5.] In August 2016, just days before the start of the Indiana State Fair, HHPA notified ITM that it was prohibited from operating its State Fair Train on HHPA tracks, even though the FRA and the Indiana Department of Transportation ("INDOT") had "approved the operation of the equipment, crew and railroad line." [Filing No. 25 at 5-6.] ITM alleges that it complied with all of the original requirements under a July 2016 Conditional Policy of Use (the "2016 CPOU") and supplied all information that was requested by HHPA except for certain "medical physical/health requirements for the ITM crew certifications which are HIPPA protected." [Filing No. 25 at 6.]

On October 26, 2016, the President of HHPA, Michael Obergfell, wrote a letter to ITM outlining various requirements with which ITM had not complied and stated:

> Due to the length of time that has expired since the HHPA's issuance of [the 2016 CPOU] and today, I would like for ITM to provide all of the items listed in our [2016 CPOU] at one time, and reference each document to the corresponding item

in the [2016 CPOU]. Once received, HHPA will review accordingly and let you know where we feel you are deficient or need additional documentation.

Lastly, it has come to my attention that you have made numerous written statements to your membership indicating in some fashion or another that essentially all documentation required by HHPA has been provided by ITM. While I do appreciate that ITM has provided some limited information, the fact is that ITM is not substantially in compliance with the conditions of the July 11th resolution nor has the documentation needed been provided. Any statements otherwise need to be immediately corrected and no further inaccurate statements should be made if our organizations are going to work out the current situation.

As I stated earlier, it has now been more than ninety (90) days since the date of the July HHPA resolution. The HHPA has taken steps on its own to secure information on the condition of the line, which should be an ITM function. However, our contracted inspector has completed the inspection and should have an inspection report available shortly, that HHPA will utilize to develop a 5 Year Maintenance Plan that we expect our Operator to participate in, in lieu of paying trip or use fees, once reinstated to utilize the facilities. In the event ITM has not provided the required [2016 CPOU] information to the HHPA Board to determine if ITM is in substantial compliance by November 11, 2016, I intend to advise the Board that compliance at any future date is unlikely and recommend that the HHPA should consider moving forward with any and all options to preserve and protect the line, which could include issuing a Request for Proposals for a new operator on our owners facilities.

[Filing No. 25-6 at 2.] Subsequently, HHPA issued a Request for Proposals for a new operator for the railroad line. [Filing No. 25 at 6.] It also prohibited ITM from operating its Polar Bear Express Train in November and December of 2016. [Filing No. 25 at 6.]

ITM alleges that the majority of its equipment is currently housed at Forest Park in Noblesville, and that it cannot be moved because it cannot operate the equipment on HHPA rails. [Filing No. 25 at 5.] ITM alleges that HHPA refused to consider ITM's request to operate its trains on its lines at HHPA board meetings or public meetings, and did not allow public input on its "plan to 'rip up the rails' and put in a trail that is redundant to other trails currently funded," causing "ITM to be trapped in Noblesville without economical means to move, sell or restore historic equipment and artifacts." [Filing No. 25 at 9.]

ITM initiated this lawsuit on July 10, 2017, [Filing No. 1], and filed the operative Amended Complaint on August 7, 2017, [Filing No. 25].  ITM does not enumerate specific claims in the Amended Complaint, but requests a preliminary injunction allowing it to operate the State Fair Train and the Polar Bear Express Train in 2017.  [Filing No. 25 at 11-12.]

On August 10, 2017, the Court issued an Order to Show Cause in which it discussed its concerns regarding whether it has subject matter jurisdiction over this matter.  [Filing No. 29.] ITM filed a Jurisdictional Statement in Response to Court's Order to Show Cause shortly thereafter, [Filing No. 33], and HHPA then filed the pending Motion to Dismiss, [Filing No. 35].[1]  ITM's Jurisdictional Statement and HHPA's Motion to Dismiss deal in part with the same issue – whether the Court has subject matter jurisdiction over this matter – and both are discussed below.

### III.
#### DISCUSSION

In its Motion to Dismiss, HHPA argues that the Court does not have subject matter jurisdiction over this matter and that, even if it does, ITM has failed to state a claim upon which relief can be granted.  The Court addresses each argument in turn.

### A.  Subject Matter Jurisdiction

HHPA argues that the Court does not have subject matter jurisdiction over this matter because it does not have diversity jurisdiction based on ITM's own allegations, and it does not have federal question jurisdiction because the circumstances alleged in the Amended Complaint do not give rise to constitutional violations.  [Filing No. 36 at 4-10.]

---

[1] The Court notes that Defendants City of Fishers and City of Noblesville were not served until September 2017, and have not yet answered or otherwise pled to the Amended Complaint.

### 1. *Diversity Jurisdiction*

HHPA argues that the Court does not have diversity jurisdiction over this matter because ITM has alleged that it is an Indiana corporation, that HHPA is a governmental entity located in Indiana, and that the cities of Fishers and Noblesville are located in Indiana, so there is no diversity of citizenship. [Filing No. 36 at 4.] ITM concedes that there is not diversity of citizenship here. [Filing No. 39 at 5.] The Court agrees that it cannot exercise diversity jurisdiction over this matter, as all of the parties are citizens of Indiana.

### 2. *Federal Question Jurisdiction*

HHPA also argues that the Court does not have federal question jurisdiction in this case, asserting that "[t]he crux of ITM's First Amendment claim is that HHPA did not request or permit 'public input or comment'…; that HHPA in particular did not allow ITM to address the HHPA in an official or public meeting….; and that ITM was not allowed a hearing to modify HHPA's written request for proposals…. Such circumstances, however, do not give rise to a First Amendment claim as '[t]he Supreme Court has never extended First Amendment forum analysis to a deliberating legislative body or to the body's rules about who may speak.'" [Filing No. 36 at 5.] As for ITM's reference to the Fourteenth Amendment, HHPA argues that "ITM has failed to demonstrate that it had any property interest to the tracks managed by HHPA," and instead "acknowledges that its contract with HHPA expired in 2006 and that a subsequent contract was never negotiated." [Filing No. 36 at 6-7.] HHPA asserts that ITM complains regarding HHPA's scoring methodology for the RFPs, but "has failed to present any factual allegations…which demonstrate how the methodology used violated due process, how HHPA deprived ITM of a property interest, or how it was injured by HHPA as a result of a violation of ITM's rights to due process." [Filing No. 36 at 7.] HHPA also contends that ITM has not alleged a valid equal protection claim under the Fourteenth

Amendment because it "has failed to present any factual allegations demonstrating that HHPA has treated ITM differently than any other person or entity." [Filing No. 36 at 8.] Finally, HHPA argues that various statutes and regulations ITM relies upon do not confer federal question jurisdiction because they do not establish a cause of action on the part of ITM. [Filing No. 36 at 8-10.]

In its Jurisdictional Statement, ITM argues that it alleges claims under the First and Fourth Amendments, and a claim under the Federal Rail Act. [Filing No. 33 at 6.] ITM argues that "[i]t is settled that the probability of defeat on the merits does not, by itself, strip a plaintiff's claim of federal jurisdiction." [Filing No. 33 at 7.] In its response to HHPA's Motion to Dismiss, ITM reiterates that it asserts claims under the First and Fourteenth Amendments. [Filing No. 39 at 2-3.] It describes its First Amendment claim as alleging "that HHPA did not request or permit 'public input or comment' by ITM; HHPA in particular did not allow ITM to address the HHPA in official or public meetings. Further, ITM was not allowed a hearing to modify HHPA's written request for proposals." [Filing No. 39 at 5-6.] ITM further contends that it has alleged a due process claim under the Fourteenth Amendment and has "provided the documents to demonstrate that it had [a] property interest, [and] paid over $3 million in upkeep and the use of the tracks, managed and owned by Defendants," and that "[o]ne of [its] injuries is it cannot operate on the tracks and the tracks are being removed to install a trail system." [Filing No. 39 at 6-7.] As to an equal protection claim under the Fourteenth Amendment, ITM claims that "HHPA and other Defendants have treated ITM with defamatory statements and differently than any other person or entity," that "others were allowed to make…public presentations," that although it was given an opportunity to submit a proposal to HHPA, "the decision of who would be selected operator was made prior to the determination by HHPA," and that "ITM protests the scoring methodology used

by HHPA in assessing the proposals received to support that position." [Filing No. 39 at 7.] Finally, ITM argues that "the [FRA] and its corresponding duties and powers under the C.F.R., can be interpreted as creating a cause of action which would allow ITM to file its Amended Complaint in that it regulates the operations of all trains in the United States." [Filing No. 39 at 8.]

When a plaintiff invokes federal question jurisdiction, "'federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit.'" *LaSalle Nat. Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 143 (7th Cir. 1996) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536 (1974) (internal quotation omitted)). Under this standard, "only the most extreme cases will fail the jurisdictional test of substantiality." *LaSalle*, 76 F.3d at 143; *see also Oneida Indian Nation of N.Y. State v. Oneida County, New York*, 414 U.S. 661, 666-67 (1974) (reversing lower court's jurisdictional dismissal and stating that the federal right plaintiff invoked "cannot be said to be so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits").

The Court finds that it has federal question jurisdiction over this matter. This is not to say that IMS has stated a claim upon which relief can be granted – that inquiry is governed by a different standard. In terms of jurisdiction, however, the Court finds that ITM's First and Fourteenth Amendment claims are not "so attenuated and unsubstantial as to be absolutely devoid of merit."[2] *LaSalle*, 76 F.3d at 143. Accordingly, the Court **DENIES IN PART** HHPA's Motion to Dismiss,

---

[2] Since the Court concludes that it has federal question jurisdiction based on ITM's First and Fourteenth Amendment claims, it need not consider whether ITM's claims under various other federal statutes or regulations also confer jurisdiction. It will, however, address those claims below in connection with HHPA's 12(b)(6) motion.

[Filing No. 35], to the extent that it exercises federal question jurisdiction over ITM's First and Fourteenth Amendment claims.[3]

### B. Sufficiency of Allegations

HHPA also argues that, even accepting all of the well-pled facts alleged in ITM's Amended Complaint as true, and drawing all permissible inferences in favor of ITM, it has failed to state a claim upon which relief can be granted. [Filing No. 36 at 11.] HHPA asserts that the Amended Complaint "at most alleges that ITM had a contract with HHPA which expired in 2006…, that since 2006 ITM was granted a permissive use of HHPA's rail line that was memorialized in a Conditional Policy of Use…, that ITM admits it failed to meet all of the conditions of said Conditional Policy of Use…, that HHPA has chosen to no longer allow ITM's permissive use of the rail line but instead is seeking a new operator for the rail line…, and that ITM loses revenue by no longer being allowed to use the rail line in question." [Filing No. 36 at 11.] HHPA contends that ITM has failed to allege facts indicating that it had any property rights to the rail line, that HHPA's decision to change operators was prohibited by federal law, or that HHPA "engaged in any form of viewpoint discrimination by allowing certain members of the public to speak while denying ITM that same opportunity." [Filing No. 36 at 11.]

In response, ITM argues that it has sufficiently alleged that it "suffered losses, had its business interfered with, being defamed, having the tracks removed, loss of its business and volunteer base, no monies to repair equipment and foster new business on the middle and southern end of the lines, being prohibited from operatin[g], not allowing to present at public meetings, are in violative [sic] of constitutional rights and represent irreparable injury and threat of harm to the

---

[3] To the extent ITM asserts any state law claims, the Court would need to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367. This issue is discussed further below.

public interest, prohibited by or made in a manner contrary to any federal or even state law by Defendants." [Filing No. 39 at 9.] ITM also argues that it has presented factual allegations to support claims under 49 U.S.C. § 103, 49 C.F.R. § 1.89, the Constitution, and "other laws which would give rise to a claim under 42 U.S.C. § 1983." [Filing No. 39 at 9.]

The Seventh Circuit Court of Appeals has instructed that:

[I]t is obviously possible that a plaintiff may successfully invoke federal jurisdiction, for purposes of 28 U.S.C. § 1331, and yet may lose on some other ground, such as a failure to state a claim on which relief can be granted, or failure to prove the merits after a full trial…. In some cases, the distinction between a claim that is wholly frivolous for jurisdictional purposes and a claim that is doomed on the merits may seem medieval in its fineness, and may be of little practical importance. Nonetheless, the distinction is one that the Supreme Court has always recognized, and it rests on both sound policy grounds as well as practical considerations. From a policy standpoint, it underscores the importance of giving a full hearing to those who are attempting to raise claims in federal court, even if those claims are eventually unsuccessful. From the more pragmatic side, the way in which the facts are handled under Fed. R. Civ. P. 12(b)(1) differs significantly from the correct approach for purposes of Rule 12(b)(6)….

*LaSalle*, 76 F.3d at 143-44 (citations omitted). The Court considers each of ITM's federal theories with that principle in mind.

### 1. *First Amendment Claim*

ITM describes its First Amendment claim as "that HHPA did not request or permit 'public input or comment' by ITM; HHPA in particular did not allow ITM to address the HHPA in official or public meetings," and "ITM was not allowed a hearing to modify HHPA's written request for proposals." [Filing No. 39 at 5-6.] The allegations in the Amended Complaint support that description. [*See* Filing No. 25 at 8 (ITM alleging that "HHPA did not consider or allow to be considered on their meeting agendas the representation of ITM as a capable operator or make its case as to why it should be allowed to operate the line for several years as evidence by their agendas and meeting minutes"; "HHPA refused to allow ITM to address the board in public meetings to

10

implement an Operating Agreement since its expiration in 2006, in violation of its First Amendment Rights"; "HHPA did not allow the subject of the rail operator to be an agenda item on their public meetings for several years[, n]or did it allow the ITM Officials or Representatives to address the HHPA in an official or public meeting"; "[t]he owners did not allow public input or comment to their plan to 'rip up the rails' and put in a trail that is redundant to other trails currently funded"; "HHPA has denied ITM the right for public expression of its point of view").]  It is well-settled, however, that the public does not have a constitutional right to be heard by a public body that is making a policy decision.  *See, e.g., Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 283-84 (1984) ("The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy….Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted….  Public officials at all levels of government daily make public decisions based only on the advice they decide they need and choose to hear.  To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices").

Because ITM bases its First Amendment claim on HHPA's failure to allow it to address HHPA regarding ITM's desire to be the track operator, its claim fails as a matter of law based on ITM's own allegations.  *City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission*, 429 U.S. 167, 175, n.8 (1976) ("Plainly, public bodies may confine their meetings to specified subject matter and may hold non-public sessions to transact business").

*2. Fourteenth Amendment Claim*

As to its Fourteenth Amendment claim, ITM characterizes that claim as brought under both the Due Process Clause and the Equal Protection Clause. ITM argues that it was denied due process because it "provided the documents to demonstrate that it had property interest, [and] paid over $3 million in upkeep and the use of the tracks, managed and owned by Defendants." [Filing No. 39 at 6-7.] For its equal protection claim, ITM argues that its allegations "demonstrate that HHPA and other Defendants have treated ITM with defamatory statements and differently than any other person or entity." [Filing No. 39 at 7.] ITM also contends that it alleged that it was not allowed to present information at meetings but others were, and that the decision of who would be the rail operator was made before ITM had submitted its proposal. [Filing No. 39 at 7.] ITM states that it "protests the scoring methodology used by HHPA in assessing the proposals received to support that position." [Filing No. 39 at 7.]

The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. A procedural due process claim requires ITM to allege "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). Here, ITM appears to argue that it had a property interest in the tracks because it paid for upkeep and the use of the tracks. [Filing No. 39 at 7.] But ITM alleges in the Amended Complaint that HHPA "is the owner of the railroad tracks from 10th Street, Downtown Indianapolis, Indiana to Tipton, Indiana, along with Defendants, City of Fishers, Indiana, and City of Noblesville, Indiana." [Filing No. 25 at 2.] ITM has not provided any legal authority for the proposition that paying for upkeep and use of the tracks – which ITM's own allegations make clear was done pursuant to a contract and, later, the CPOUs – creates a property interest protected by the

Constitution.  The lack of any allegations indicating that ITM had a cognizable property interest in the use of the tracks is fatal to a due process claim.

The Fourteenth Amendment's Equal Protection Clause commands that no state shall "'deny to any person within its jurisdiction the equal protection of the laws,' which essentially is a direction that all persons similarly situated should be treated alike." *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006) (citation omitted).  "All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under like circumstances and conditions, people must be treated alike, unless there is a rational reason for treating them differently." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (citation and quotation omitted).  ITM has not alleged that HHPA treated it any differently than other entities.  ITM complains that it was not allowed to present information to HHPA at meetings but, significantly, does not allege that other entities were allowed to do so either.[4]  ITM also argues that HHPA decided who would be the rail operator before considering ITM's proposal, [*see* Filing No. 39 at 7], but this specific allegation also does not appear in the Amended Complaint.[5]  Finally, ITM's allegations regarding the scoring methodology used by HHPA in evaluating the proposals it received for track operator does not support an equal protection claim.  ITM has not alleged that it had any property interest in the tracks, so the methodology by which HHPA evaluated the proposals for track operator does not implicate ITM's constitutional rights.

---

[4] ITM argues that "[w]hile ITM complains that it was not allowed to present information to Defendant's [sic] at its meetings, others were allowed to make such public presentations."  [Filing No. 39 at 7.]  The second part of the sentence, however – that others were allowed to make public presentations – does not appear anywhere in the Amended Complaint's allegations.

[5] ITM's allegation that "the address for the submission of the proposals in the RFP document approved by the HHPA board had an invalid address, and therefore allowed a proposal to be accepted after the deadline due to HHPA," [Filing No. 25 at 10], is too vague to support an equal protection claim.

ITM's Amended Complaint fails to state Fourteenth Amendment due process and equal protection claims because ITM's own allegations establish that ITM does not have a property interest in the tracks, and ITM has failed to adequately allege that it was treated differently than others.

### 3. Claims Under Other Federal Statutes or Regulations

ITM also purports to assert claims under 49 U.S.C. § 103, 49 C.F.R. § 1.89, and 42 U.S.C. § 1983. [Filing No. 39 at 7-9.] However, none of these provisions provides ITM with a cause of action. 49 U.S.C. § 103 sets forth the FRA's duties, the officers of the FRA, the duties, powers, and limitations of the Administrator, the authority of the Secretary of Transportation, and the performance goals and reports for the Administrator. The statute does not create a cause of action for ITM, or a right that ITM can assert has been infringed upon by HHPA. Similarly, 49 C.F.R. § 1.89 lists functions delegated to the FRA, and does not provide any type of claim for ITM. Finally, 42 U.S.C. § 1983 "is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (citation omitted). ITM's vague reference to "other laws which would give rise to a claim under 42 U.S.C. § 1983," [Filing No. 39 at 9], is unavailing.

In sum, the Court finds that ITM has not alleged claims under the First or Fourteenth Amendments of the United States Constitution, 49 U.S.C. § 103, 49 C.F.R. § 1.89, or 42 U.S.C. § 1983 for which relief can be granted. The Court **GRANTS IN PART** HHPA's Motion to Dismiss,

[Filing No. 35], to the extent that it dismisses those claims with prejudice.[6]

### C. State Law Claims

The Court cannot discern whether ITM intends to allege state law claims in this matter, perhaps for breach of contract or defamation. Out of an abundance of caution, the Court will determine whether to exercise its discretion to retain jurisdiction over those potential claims pursuant to 28 U.S.C. § 1367(a).

The district court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction….") (citation and quotation omitted). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 183 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "In the usual case in which all federal claims are dismissed before trial, the

---

[6] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend its complaint once as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim." ITM amended its Complaint once in response to HHPA's First Motion to Dismiss, and then chose not to amend its Amended Complaint in response to HHPA's Second Motion to Dismiss, opting instead to brief the motion and adjudicate the issues. The Court is not required to give ITM another chance to plead its claims because it has already had an opportunity to cure deficiencies in its pleadings. *See Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). Further, ITM has not given any indication that it could, in fact, successfully amend its Amended Complaint to cure the defects identified above, even if given the opportunity to do so. Accordingly, the Court, in its discretion, dismisses ITM's federal claims with prejudice.

balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

This litigation is in the early stages. Defendants City of Fishers and City of Noblesville have not yet even answered the allegations of ITM's Amended Complaint, and it does not appear that discovery has taken place. Accordingly, the Court concludes that all four factors – economy, convenience, fairness, and comity – strongly weigh in favor of it relinquishing supplemental jurisdiction over any state law claims ITM may assert and dismissing those claims without prejudice. *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) ("A decision to relinquish pendent jurisdiction before the federal claims have been tried is, as we have said, the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances").

### D.  Defendants City of Fishers and City of Noblesville

Defendants City of Fishers and City of Noblesville were served with the Amended Complaint well after ITM was, and have not yet answered or otherwise pled to the Amended Complaint. ITM does not set forth any specific allegations in the Amended Complaint against City of Fishers, and as to City of Noblesville only states that it "has attempted to defame ITM by claiming an (sic) 'toxic spills' within the ITM leased property, having been rebutted by the Indiana Department of Environmental Management (IDEM) after their initial investigation in a statement that said that 'there is not eminent hazard to public health.'" [Filing No. 25 at 9.] To the extent ITM alleges federal claims against City of Fishers and City of Noblesville also, the Court dismisses those claims with prejudice. *See Malak v. Associates Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (holding that where one defendant files a motion that is equally effective in barring the claim against the other defendants, the Court may *sua sponte* enter judgment in favor of the additional

non-moving defendants if the plaintiff had an adequate opportunity to argue in opposition to the motion. Because any federal claims against City of Fishers and City of Noblesville would be brought under the same theories as those that were brought against HHPA, and since HHPA's arguments are equally effective at barring the claims against City of Fishers and City of Noblesville, the Court dismisses the claims against them as well. And as discussed above, to the extent ITM asserts state law claims against City of Fishers and City of Noblesville, the Court declines to exercise jurisdiction over those claims.

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **DENIES IN PART** HHPA's Motion to Dismiss, [Filing No. 35], to the extent that it exercises federal question jurisdiction over this matter;

- **GRANTS IN PART** HHPA's Motion to Dismiss, [Filing No. 35], to the extent that it finds that ITM has not stated a federal claim upon which relief can be granted and **DISMISSES** those claims against HHPA **WITH PREJUDICE**;

- **DISMISSES WITH PREJUDICE** ITM's federal claims against Defendants City of Fishers and City of Noblesville; and

- Declines to exercise supplemental jurisdiction over, and **DISMISSES WITHOUT PREJUDICE,** any state law claims ITM asserts against Defendants.

Date: 10/20/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**